A. D. MORTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3559. Promulgated May 11, 1927.

The cost of 46,033 shares of stock determined.

*Charles H. Garnett, Esq., L. A. Rowland, Esq.,* and *E. R. Willson, C. P. A.,* for the petitioner.

*John D. Foley, Esq.,* and *B. H. Saunders, Esq.,* for the respondent.

In this proceeding the petitioner seeks a redetermination of his liability for income taxes for the year 1919, for which the Commissioner has determined a deficiency in the sum of $15,476.35. The sole issue is as to the basis to be used in the computation of gain or loss resulting from the sale of certain shares of stock.

FINDINGS OF FACT.

The petitioner, for some time prior to June, 1914, had been negotiating with Baruch Brothers of New York City with reference to the organization of a corporation to take over certain oil and gas leases owned by him. One of the conditions, so far as the petitioner was concerned, was the payment to him of a substantial amount of money. After having the properties investigated and valued, Baruch Brothers agreed to organize a corporation to be known as the New York-Oklahoma Oil Co., and in exchange for the leases and equipment, to issue to the petitioner 600,000 shares of common stock of the par value of one dollar per share and to pay him $100,000. Of this stock he was to deliver to Baruch Brothers 300,000 shares and to one Surles 40,000 shares, thus leaving in his hands 260,000 shares. Preferred stock of the par value of $150,000 was sold at par and a

part of the money thus received was used to pay to the petitioner the $100,000 which he was to receive in cash.

As a part of the same arrangement the various stockholders entered into an agreement whereby each deposited in escrow all of his stock of the company to be held for a period of five years, and pursuant to this agreement the petitioner so deposited all of his stock.

Thereafter, and in the year 1919, all of the parties being desirous of procuring the release of the stock held in escrow, the petitioner entered into an agreement by the terms of which he agreed to pay Baruch Brothers 80,000 shares of the stock for the release from the escrow of the remaining 180,000 shares of his stock. Having thus obtained possession of his stock, the petitioner in 1919, sold 46,033 shares of the stock for $130,243.92, which was the equivalent of $2.8294 per share.

The properties transferred to the corporation were in the main proven oil and gas properties. The full production had not been obtained and would not be obtained until additional wells were drilled. The minimum future production could be predicted with considerable certainty. The leases and personal property at the time conveyed had an actual cash value of $600,000.

The Commissioner calculated the profit from this transaction as follows:

| | |
|---|---:|
| Value of petitioner's property transferred to the corporation | $360,000.00 |
| Less cash received by petitioner to cancel indebtness against the property | 100,000.00 |
| Final cost to petitioner of 180,000 shares (260,000 shares less 80,000 shares) | 260,000.00 |
| Cost of one share, $1.444 | |
| Selling price of 46,033 shares | 130,243.92 |
| Cost of 46,033 shares | 66,490.07 |
| Taxable profit | 63,753.85 |

### OPINION.

GREEN: Two witnesses testified as to the value of the properties at the time they were acquired by the corporation. One was the engineer who investigated the properties for Baruch Brothers. In his opinion the properties were worth from $550,000 to $750,000. The petitioner testified that they were worth $700,000 subject to an indebtedness of $100,000. Cross examination developed no weakness in the opinion of values thus expressed.

The starting point for the computation of gain resulting from the sale is the cost of the stock received by the petitioner in exchange for properties. The cost of this stock to the petitioner is the value of the properties exchanged therefor, having due regard for the

$100,000 cash paid. This sum may be treated either as reducing the value of the assets to get their net value, i. e., $500,000, or as cash received so that the assets of the value of $500,000 were exchanged for stock. Either treatment gives the same result. The petitioner parted with assets having a net value of $500,000 and came into possession of 260,000 shares of stock. The cost per share was $1.923.

The petitioner transferred 80,000 shares of the stock to Baruch Brothers in consideration of the release of his stock from the escrow agreement. The value of this consideration is susceptible of measurement in dollars. The transaction in itself gave rise to no income. The 80,000 shares of stock cost the petitioner $1.923 per share. This cost should be added to the cost of the remaining shares to find the total cost of the 180,000 shares. This total cost was $500,000, or a total cost per share of $2.778.

The Commissioner, in his computation of gain, used as the sale price the sum of $130,243.92. There is no evidence to indicate that this was not the true sales price. This gives a sale price of $2.8294 per share. The gain per share is ascertained by subtracting from this amount the total cost per share ($2.778). The gain per share multiplied by the number of shares sold gives the gain on the shares so sold.

> *Judgment will be entered after 15 days'*
> *notice, under Rule 50.*